IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THEODORE G. HANNENMANN, et al., | ) | CASE NO.  1:07CV2712 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| STATE FARM INSURANCE | ) | |
| COMPANIES, | ) | **MEMORANDUM OF OPINION** |
| | ) | Docket ##11, 12, 13 |
| Defendant. | ) | |

This case is before the magistrate judge by consent.  Pending is the motion of plaintiffs, Theodore G. Hannenmann and Eleanor L. Hannenmann (collectively, "the Hannenmanns"), for summary judgment as to the first cause of action in their complaint (Doc. 12).  Plaintiff, State Farm Insurance Companies ("State Farm"), opposes the Hannenmanns' motion (Doc. 16).  Also pending before the court is State Farm's motion for summary judgment as to all the Hannenmanns' causes of action (Doc. 11).  The Hannenmanns oppose this motion (Doc. 15).  Finally, pending before the court is State Farm's motion to strike the Hannenmann's expert's affidavit (Doc. 13).  The Hannenmanns oppose this motion (Doc. 14).  For the reasons given below, the court overrules the Hannenmanns' motion for summary judgment, grants State Farm's motion for summary judgment, and dismisses State Farm's motion to strike as moot.

I

The Hannenmanns are residents of Ohio.  State Farm is incorporated and has a principal place of business in Illinois.  The amount in controversy exceeds $75,000.

The parties are in agreement regarding the facts of this case.  On November 27, 2005 the Hannenmanns were involved in an automobile accident with Lynn McCollum ("McCollum").  Both the Hannenmanns and McCollum were covered by automobile insurance from State Farm.  McCollum's coverage included $100,000 per person up to a maximum of $300,000 per accident.

At trial, McCollum was found liable to the Hannenmanns.  State Farm paid the Hannenmanns $100,000 each as required by McCollum's coverage.  The injuries to the Hannenmanns, however, exceeded the $200,000 received from State Farm.  The Hannenmanns argued that they possessed uninsured motorist/underinsured motorist coverage ("UM/UIM coverage") in the amount of $1,000,000 by virtue of their Personal Liability Umbrella Policy ("the umbrella policy") with State Farm.  State Farm denied that they had such coverage.

The Policy Endorsement included as part of the umbrella policy contains the following relevant terms:

> 16.    When shown on the **Declarations** as "REQUIRED UNDERLYING INSURANCE POLICIES', these terms are defined as follows:
>
> a.    "AUTOMOBILE LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle, trailer or semi-trailer designed for use mainly on public roads.  The policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations**. . . .

Policy Endorsement, Doc. 12, Exh C, p. 1.  The Declarations Page included as part of the umbrella policy contains the following relevant terms:

> PERSONAL LIABILITY UMBRELLA POLICY . . .
>
> **Coverages**                             **Limits of Liability**

2

Coverage L - Personal Liability $ 1,000,000
    SELF INSURED RETENTION NONE

SEE SUPPLEMENTAL PAGE FOR IMPORTANT INFORMATION CONCERNING YOUR UNINSURED MOTOR VEHICLE COVERAGE

---

**Required Underlying Insurance Policies**

You agree that the underlying insurance policies listed below:
(1) Are in force and will be continued in force for at least the limits shown,
(2) Insure all land motor vehicles and watercraft owned by, rented by, or regularly furnished to you

| Type of Policy (These terms are defined in the policy) | Minimum Underlying Limits Single Limits | or Dual Limits |
|---|---|---|
| Automobile Liability | Bodily Injury And Property Damage Combined | Bodily Injury-$100,000 Each Person $300,000 Each Loss |
| Recreational Motor Vehicle Liability Including Passenger Bodily Injury | $300,000 | Property Damage-$ 25,000 Each Loss |
| PERSONAL RESIDENTIAL LIABILITY | $100,000 | BODILY INJURY AND PROPERTY DAMAGE COMBINED |
| WATERCRAFT LIABILITY | $100,000 | BODILY INJURY AND PROPERTY DAMAGE COMBINED |

              \*     \*     \*     \*     \*

Continued on Supplemental Page

              \*     \*     \*     \*     \*

You have been provided with the opportunity to purchase Uninsured Motor Vehicle Coverage, including underinsured motor vehicle protection, in an amount equal to your limits for bodily injury liability coverage. A named insured or an appilcant [sic] has declined to purchase Uninsured Motor Vehicle Coverage (including underinsured motor vehicle protection). If you want to purchase Uninsured Motor Vehicle Coverage or have questions, please contact your agent.

Declarations Page and Supplemental Declarations Page, Doc. 15, Exh. B.[1]

The Hannenmanns initiated a civil action against State Farm in state court on August 3, 2007. Their first cause of action seeks a declaratory judgment against State Farm that State Farm is responsible for paying the actual damages sustained by the Hannenmanns. They also seek payment of those damages and penalties against State Farm for denying coverage in bad faith. State Farm received a copy of the complaint on August 10, 2007 and removed the action to this court on September 7, 2007. Both parties now move for summary judgment.

II

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The moving party must demonstrate to

---

[1] All information up to and including "Continued on Supplemental Page" appears on the Declarations Page of the policy. The final paragraph of the quoted material appears on the Supplemental Declarations Page.

Plaintiffs assert in their response brief that they do not remember receiving a "Supplemental Declarations Page" and conclude that they never received this page. They also assert in their response brief that plaintiffs first raised this issue in their motion for summary judgment.

Plaintiffs' motion for summary judgment does *not* assert that the plaintiffs failed to receive the "Supplemental Declarations Page" or that this page was not part of the "Declarations." Indeed, attached to plaintiffs' motion as Exh. B is what is referred to in the brief in support of plaintiffs' motion as the "Declarations Page" of the umbrella policy. Doc. 12 at the second of the unnumbered pages. Included in Exh. B are the page denominated as the "Declarations Page" and the page denominated as the "Supplemental Declarations Page." Having introduced *both* pages into the record as the "Declarations Page," plaintiffs will not now be heard to assert that the second page is *not* part of the "Declarations Page" or that the plaintiffs were unaware of its existence. Moreover, plaintiffs offer no explanation as to why, if they never saw the "Supplemental Declarations Page" before initiating this suit, such statements on the "Declarations Page" as "SEE SUPPLEMENTAL PAGE FOR IMPORTANT INFORMATION CONCERNING YOUR UNINSURED MOTOR VEHICLE COVERAGE" and "Continued on Supplemental Page" failed to put them on notice that there were additional pages to the policy.

the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party must then show the existence of a material fact which must be tried. *Id.* at 324.

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966). This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex,* 477 U.S. at 324. The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *id.*, or by any other evidentiary material admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998). Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990). There must be enough evidence that a reasonable jury could find for the nonmoving party. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir. 1989).

III

The umbrella policy contains no choice of law provisions, nor does either party assert that such a provision in any document controls the applicable law in this case. Both parties presume that Ohio law governs this insurance contract. In the absence of any evidence or authority to the contrary, the court presumes that Ohio law should be applied to the contract.

*A.     Ohio law and contract interpretation*

Both motions for summary judgment hinge upon a single issue: whether the umbrella policy should be read as providing UM/UIM coverage to the Hannenmanns. The resolution of this issue is a question of law for the court. *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St. 2d 241, 241, 374 N.E.2d 146, 148 (1978).

A court's objectives in construing a contract are to determine the intent of the parties and to give it effect. *Aultman Hosp. Assoc. v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53, 544 N.E.2d 920, 923 (1989). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Medical Life Ins. Co.*, 31 Ohio St. 3d 130, 130, 509 N.E.2d 411, 411 (1987) (paragraph one of the syllabus).

"[T]he first general maxim of interpretation . . . is that it is not allowable to interpret what has no need of interpretation. When a . . . [writing] is, worded in clear and precise terms; when its meaning is evident, and tends to no absurd conclusion, there can be no reason for refusing to admit the meaning which . . . [it] naturally presents." *Allen v. Standard Oil Co.*, 2 Ohio St. 3d 122, 124, 443 N.E.2d 497, 499 (1982) (quoting *Lawler v. Burt*, 7 Ohio St. 340, 350, 1857 WL 52 (1857)) (punctuation in the quoting source). "It is not the responsibility or function of th[e] court to rewrite the parties' contract in order to provide for a more equitable result." *Foster Wheeler Enviresponse,*

6

*Inc. v. Franklin County Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362, 678 N.E.2d 519, 526 (1997). "Where a contract is plain and unambiguous . . . , it does not become ambiguous by reason of the fact that in its operation it may work a hardship upon one of the parties." *Id.*, 46 Ohio St. 3d at 55, 544 N.E.2d at 924; *see also Ullman v. May*, 147 Ohio St. 468, 72 N.E.2d 63, 63 (1947) (paragraph one of the syllabus).

"[A] writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole. *Foster Wheeler*, 78 Ohio St. 3d at 361, 678 N.E.2d at 526 (citing *New York Coal Co. v. New Pittsburgh Coal Co.*, 86 Ohio St. 140, 167, 174, 99 N.E. 198, 204, 206 (1912), for the proposition that "the meaning of words or provisions in a contract may be indicated or controlled by those with which they are associated."). "In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." *Foster Wheeler*, 78 Ohio St. 3d at 362, 678 N.E.2d at 526 (quoting *Farmers Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 309, 94 N.E. 834, 834 (1911) (paragraph six of the syllabus)).

"Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander*, 53 Ohio St. 2d at 241, 374 N.E.2d at 148 (paragraph two of the syllabus). "Technical terms will be given their technical meaning, unless a different intention is clearly expressed." *Foster Wheeler*, 78 Ohio St. 3d at 361, 678 N.E.2d at 526.

"A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions

only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Kelly v. Medical Life Ins. Co.*, 31 Ohio St. 3d 130, 132, 509 N.E.2d 411, 413 (1987). Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract, or if the terms are reasonably susceptible to more than one interpretation. *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.* (1998), 129 Ohio App.3d 45, 55 (1998) (citing *Potti v. Duramed Pharmaceuticals, Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)).

If parol evidence does not remove the ambiguity in a writing whose meaning is unclear, the secondary rule of strict construction against the drafter applies. *Cline v. Rose*, 96 Ohio App. 3d 611, 615-16, 645 N.E.2d 806, 808-09 (1994). "[T]he rule is well established that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. . . . In other words, he who speaks must speak plainly or the other party may explain to his own advantage." *McKay Mach. Co. v. Rodman*, 11 Ohio St. 2d 77, 80, 228 N.E.2d 304, 307 (1967) (citing *Smith v. Eliza Jennings Home*, 176 Ohio St. 351, 199 N.E.2d 733 (1964)). Thus, ambiguities in an insurance contract are resolved against the insurer who prepared the contract. *Thompson v. Preferred Risk Mut. Ins. Co.*, 32 Ohio St. 3d 340, 513 N.E.2d 733 (1987).

*B. Alleged ambiguities in the umbrella policy*

The Hannenmanns argue that ¶ 16a of the Policy Endorsement is ambiguous. In particular, they point to the surface structure of ¶ 16a and to the words "coverage," "policy," and "declarations" as potentially implicating multiple deep structures, thus inviting multiple interpretations. State Farm denies that the Hannenmanns' preferred interpretation is a possible reading of the policy.

Paragraph 16a reads:

8

> 16. When shown on the **Declarations** as "REQUIRED UNDERLYING INSURANCE POLICIES', these terms are defined as follows:
>
> a. "AUTOMOBILE LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle, trailer or semi-trailer designed for use mainly on public roads. The policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations**. . . .

According to the Hannenmanns, the surface structure and language of this paragraph result in a series of ambiguities. They contend that ¶ 16a can be interpreted to mean that "your [umbrella] policy" provides "automobile liability" and that under certain conditions it also provides UM/UIM coverage. The Hannenmanns contend that the final sentence of ¶ 16a is susceptible of at least four interpretations:

> 1. The [automobile liability] policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations** [of the umbrella policy].
>
> 2. The [umbrella] policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations** [of the automobile liability policy].
>
> 3. The [automobile liability] policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations** [of the automobile liability policy].
>
> 4. The [umbrella] policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations** [of the umbrella policy].

The Hannenmanns contend that because interpretation #4 could be understood as stating that the umbrella policy provides UM/UIM coverage if the declarations page of the umbrella policy shows such coverage, the ambiguity in the policy created by ¶ 16a should be read against State Farm and in favor of the umbrella policy's providing UM/UIM coverage.

There is a problem with this argument, however. The first sentence of ¶ 16 expressly limits

9

the term "automobile liability" as defined in ¶ 16a as applying only "[w]hen shown on the Declarations as 'REQUIRED UNDERLYING INSURANCE POLICIES' . . . ." "Automobile Liability," as defined in ¶ 16a, therefore, refers only to "required underlying insurance policies." It cannot reasonably be read as referring to the umbrella policy itself. Thus, ¶ 16a cannot be interpreted to mean that "your [umbrella] policy" provides "automobile liability." Restricting the meaning of "automobile liability" in this way eliminates interpretations #2 and #4.

The remaining two interpretations refer to two alternative circumstances under which a requirement of including UM/UIM coverage is imposed on the underlying automobile policy. Neither interpretation asserts anything about what the *umbrella* policy may or may not be understood to contain. The Hannenmanns can not rely on either interpretation #1 or #3, therefore, to argue that ambiguity in ¶ 16 must be read as an assertion that the umbrella policy provides UM/UIM coverage.

There is a second problem with the Hannenmanns' reliance on interpretation #4, *i.e*., that "the [umbrella] policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations** [of the umbrella policy]." Such a reading of the policy is unreasonable because the declarations of the umbrella policy does *not* show UM/UIM coverage. Thus, even if interpretation #4 were a possible reading of ¶ 16, which it is not, the conclusion that the umbrella policy contains UM/UIM coverage is not warranted because its antecedent condition is not met.

Finally, although it is not dispositive of the issue, a similar argument was made regarding identical policy language in *Arn v. McLean,* 159 Ohio App. 3d 662, 671, 825 N.E.2d 181, 188 (2005). The court found that the language was not ambiguous and could not be interpreted as

asserting that the umbrella policy included UM/UIM coverage.[2]

For these reasons the court finds that the umbrella policy cannot be read as providing the Hannenmanns umbrella coverage against damage by uninsured and underinsured motorists. Thus, State Farm is not obligated by the umbrella policy to pay the actual damages sustained by the Hannenmanns beyond the $200,000 already paid pursuant to McCollum's insurance policy.

IV

State Farm moves to strike the Hannenmann's expert's affidavit. State Farm argues that as the interpretation of the contract is a question of law for the court, an expert opinion regarding contract interpretation is an improper attempt to substitute the expert's opinion for that of the court. The Hannenmans respond that the opinion is offered only to help resolve factual linguistic issues on which the court's legal decision may rely.

The court found the expert's opinion thoughtful but not complete or dispositive of any linguistic issues raised by the umbrella policy. Neither granting nor overruling the motion to strike the opinion of the expert would alter the outcome of the case. For this reason, the court dismisses the motion to strike as moot.

---

[2] In *Arn*, however, the plaintiff argued that interpretation #2, *i.e.*, that the [automobile liability] policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the **Declarations** [of the automobile liability policy], was the interpretation most favorable to plaintiff.

V

For the above reasons the court overrules the Hannenmanns' motion for summary judgment, grants State Farm's motion for summary judgment, and dismisses State Farm's motion to strike as moot.

**IT IS SO ORDERED.**


Date:  May 16, 2008                                  /s/Nancy A. Vecchiarelli
                                                     Nancy A. Vecchiarelli
                                                     United States Magistrate Judge